CASE 107—ACTION TO RECOVER DAMAGES FOR BREACH OF CONTRACT— Nov. 15.

# Tevis and Others v. Carter.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

JUDGMENT FOR DEFENDANT AND PLAINTIFFS APPEAL. REVERSED.

PARTNERSHIP—ACTION AGAINST CO-PARTNER—BREACH OF PARTNERSHIP AGREEMENT.

Held: The general rule that one co-partner may not sue another at law until there has been a settlement of the partnership affairs does not prevent an action by one party to a partnership contract against the other party for its breach by reason of defendant's failure to perform those things required of him for the purpose of creating the partnership; and therefore where there was a joint undertaking between plaintiffs and defendant to install and operate an electric lighting plant in a town, plaintiffs furnishing a contract which they had with the town to erect the plant, and defendant agreeing to furnish the credit necessary for putting in the material and doing the work, plaintiffs may maintain an action at law to recover damages for defendant's failure to perform his part of the contract.

.W. B. DIXON, W. S. PRYOR AND PRYOR, O'NEAL & PRYOR, FOR
APPELLANT.

Peter Arlund and John Tevis made a contract with appellee,
Carter, by which they employed him to build an electric plant
and to do other things pertaining thereto, for the price of
$6,000, to be erected in the village of New Richmond, Clermont
county, Ohio. They had, previous to the contract with him,
agreed to erect this plant, under an arrangement with the city
authorities of New Richmond, within a certain time, the con-
tract being evidenced by a city ordinance passed by the vil-
lage, and its terms accepted by them, the work to be completed
in November, 1898.     Arlund subsequently sold his part of the
contract to Dennis Long Miller, and Miller & Tevis are the ap-
pellants on this appeal.

Carter was engaged in constructing such plants and furnish-
ing material therefor. In order to fully secure Carter, Ar-
lund & Tevis sold and transferred to him by way of pledge,
the franchise rights and privileges that were vested in them
by the contract with the city of New Richmond, the entire con-
tract showing it was never intended as an absolute sale, but a
mere indemnity or security to Carter that these appellants
would comply with their side of the agreement. Nothing what-
ever passed from Carter to them for the franchise, but on the
contrary the appellants agreed to execute, and did execute to
Carter, their note for $6,000, as a consideration for this work,
and also agreed to furnish the steam power to operate the same
at the installation of the plant.     The operating expenses were
to be paid out of the net earnings, and after paying all such
charges, if any earnings were left, they were to be applied as
a credit on the $6,000 note; showing plainly that the considera-
tion for doing this work moved from the appellants, and the
sole object of making this peculiar contract was to secure Car-
ter in his undertaking. It was further stipulated that Ar-
lund and Tevis might at any time become the purchasers of
said franchise by paying said note and any further sum that
Carter might be entitled to under the stipulations of the con-
tract, and should they fail to execute this option, which sim-
ply meant if they failed to comply with that part of the con-
tract, the plant should remain in the hands of Carter and be used
as his property for the purpose of fully indemnifying him,
and even then, Carter could refuse to hold the property as
owner, but could sue them at law or operate the plant and ap-
ply the earnings to the indebtedness due him by appellants.

This is an awkwardly drawn contract and designed to so se-
cure Carter as to make it impossible for him to lose upon

the failure of the appellants to pay him for his work, but it is apparent to any one that it was simply a contract to pay Carter $6,000 to construct this plant and to have it completed by November, 1898, in accordance with the city ordinance, and his failure to complete the work, destroyed the obligation on the part of the city to comply with the provisions of the ordinance.

The court below construed it as an absolute sale, and sustained a demurrer to the plaintiff's petition and amended petition and dismissed them. This appeal, therefore, involves the sole question of law whether the petition as amended, states a cause of action.

The whole case, in a nut shell, is this: These appellants agreed to give Carter $6,000, and perform other stipulations mentioned in the contract, if he would build this plant and comply with their contract with the city and if they failed to pay the note, the property should be Carter's, or he could sell it by law or operate it until the earnings paid his debt. He, however, disregarded his covenants, refused to construct the plant, and in this manner the appellants lost a valuable right and sustained great damages, as the proof will show. If defendants were purchasers at a mere option there was never anything constructed for them to purchase, and this shows the fallacy of the argument for appellee that seems to have found its way to the mind of the trial court.

### AUTHORITIES CITED.

Jones on Chattel Mortgages, secs, 1, 26a, 28 and 30; Bright v. Nagle, 3 Dana, 253; Honore v. Hutchings, 8 Bush, 695; Baldwin v. Crow, 86 Ky., 681; Story's Equity, sec. 1018.

STROTHER & GORDON, ATTORNEYS FOR APPELLEE.

Our contention is, that the contract is an absolute sale with a mere option on the part of appellants to repurchase.

1. The contract clearly shows that the title to whatever was embraced therein was sold to appellee, who paid therefor, $360 in cash.

2. The contract is carefully constructed, so as to absolutely prevent the payment of the $6,000 note, unless appellants exercise their option to repurchase, or unless appellee elects to exercise the option not to remain the absolute owner. In that event, appellee was given the right to collect such sum as he had expended in the construction of the plant by exercising some alleged statutory lien not created by contract, but recited therein as a lien by operation of law.

Tevis and others v. Carter.

3. Appellants have no right under the contract until they have exercised a voluntary and not an obligatory option to repurchase, and whether he would or would not exercise' such option the court will not inquire.

4. The appellee has the option under the contract to remain the absolute owner by returning the $6,000 note to appellants or their attorney, and whether he would or would not have exercised this right, the court will not inquire. This is a mere speculation. There are too many options, too many contingencies between appellants and their shadowy and visionary claim for damages for them to allege a cause of action for the damages sued for.

   The demurrer was properly sustained and the petition properly dismissed.    Steinbridge v. Steinbridge, 87 Ky., 91; Smith v. Western Union Telegraph Co., 83 Ky., 104; Lutz v. Gooshling, 93 Ky., 185; Braybill v. Brugh, 21 L. R. A., 133.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Peter Arlund, doing business under the name of Peter Arlund & Co., procured a contract in June, 1898, with the village corporation of New Richmond, Ohio, to' furnish it public electric lighting for a specified period at a certain named rate per light per annum. The lights were to be installed by October 1, 1898, or the contract was to lapse. Appellee, Carter, is alleged to have been a dealer in electrical supplies at Louisville, Ky. Arlund and Carter entered into a contract July 15, 1898, by which Arlund assigned to Carter the contract with the Ohio village, and Carter undertook to install the plant for furnishing the lights—excepting the steam power—by October 1, 1898 The contract is very wordy, and not always clear, but from it we gather the following: Six thousand dollars was to represent the cost of the plant, not including steam power. The note of Arlund and Tevis (the latter having been assigned one-half of Arlund's interest) for this sum was to be delivered to appellee, payable at the Bank of Kentucky, with privilege of renewal for four months. Tevis.

and Arlund were to furnish the steam power when the plant was installed in other respects. The expense of an engineer and of a general manager, who was to be an electrician, was to be defrayed out of the income of the business. The plant was to be all in the possession and under the control of appellee, who had the right to' sell it if the $6,000 note, or its renewal, was not paid at maturity; and after defraying running expenses, and the $6,000 and interest, and ten per cent, on the cost of construction, which was to go to appellee, the remainder, if any, was to go to appellants. There were other provisions, not material as affecting the character of the agreement. To classify this instrument has been the difficulty in this case. The lower court is said to have treated it as a contract of sale by appellants of their option or contract with the village of New Richmond. Appellant contends he hired appellee to construct the plant and furnish the material, and pledged their contract with the Ohio village and the plant as security for the contract price. From the scope of the whole enterprise, as shown, in the paper, we conclude that the arrangement was a joint undertaking by the contracting parties to install and operate the electric lighting plant at New Richmond, Ohio. Appellants furnished their "contract" as an asset. Appellee furnished "credit" for putting in the material and doing the work, as his contribution. Appellee was to have the custody of the property, including right of sale, to repay himself the actual cost of construction and running expenses of the plant. Any surplus realized (that is, profit) was to be divided among appellants and appellee thus: Appellee was to have any difference between actual cost of installing the plant and the $6,000 (if the actual cost was less than $6,000), and in addition thereto a sum equivalent to

ten per cent. of such actual cost.   Appellants were to have
the remainder.   We conclude that the arrangement was a
particular partnership, providing for an unequal division
of profits.   It is alleged that appellee violated his under-
taking, in that he failed to furnish the material or install
the plant within the time limit fixed by the ordinance con-
stituting appellants' contract with the village of New Rich-
mond, and failed to install the plant at all, and in conse-
quence appellants sustained damage for which they sue.
Ordinarily one copartner can not sue another at law until
there has been a settlement of the partnership affairs.
But this suit is by one party to a contract against the
other party for its breach, because he failed to perform
those things required of him for the purpose of creating
the partnership.   In Vance v. Blair, 18 Ohio, 532 (51 Am.
Dec., 467), the plaintiffs and defendant entered into a
partnership agreement for the purpose of obtaining a con-
tract to build a part of the Miami Canal.   Defendant broke
the contract, by failing to do what he had undertaken in
the agreement to do, resulting in the partnership losing
the contract. · The action was for the damages resulting
from the breach.   Said the court:   "We do not think the
case made in the declaration comes within the general rule'
that requires partners to seek redress against each other
in chancery.   No part of the object which induced the
parties to enter into the contract had been accomplished by
them,—no accounts made by them that required settle-
ment.   It is a suit brought solely to recover damages for a
breach of the partnership articles.    In Story, Partn. p.
319, sec. 218, it is said:   'Whether there is an express
stipulation in the partnership articles which is violated by
any partner, an action at law—either assumpsit or coven-
·ant, as the case may require—will ordinarily lie to recover

944          KENTUCKY REPORTS.          [Vol. 111

Hickman College v. Trustees Colored Common School Dist. A., &c.

damages for the 'breach thereof.' We think it a proper case for a court of law."

We are of opinion that the petition in this case stated a cause of action, and the demurrer should have been overruled. Judgment reversed, and cause remanded for proceedings not inconsistent herewith.